IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL SULLIVAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 17 C 6635 |
| v. | ) | |
| | ) | Magistrate Judge |
| GHALIAH OBAISI, as EXECUTOR | ) | Maria Valdez |
| OF THE ESTATE OF SALEH | ) | |
| OBAISI, M.D., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's motion for partial summary judgment [Doc. No. 126] and Defendant's motion for summary judgment [Doc. No. 127]. For the reasons that follow, Plaintiff's motion is denied, and Defendant's motion is granted.

**DISCUSSION**

**I. MATERIAL FACTS**[1]

1. Plaintiff Michael Sullivan is an inmate serving a life sentence at Stateville Correctional Center.

2. Defendant Saleh Obaisi, M.D. was the former Medical Director at Stateville,

---

[1] The following facts are undisputed and are derived from the parties' Local Rule 56.1 statements and responses.

1

a position Dr. Obaisi held from August 2012 to December 2017.[2]

3. On October 28, 2014, Plaintiff injured his left knee while playing basketball at the prison yard.

4. Plaintiff was diagnosed with a left displaced distal patella fracture (broken knee) with tendon avulsion and surgery was recommended.

5. On October 30, 2014, Dr. Obaisi referred Plaintiff to go offsite and consult with an orthopedic surgeon regarding the patella fracture.

6. On November 18, 2014, Plaintiff consulted with Dr. Thomas White – an orthopedic surgeon at Dreyer Medical Clinic – who scheduled Plaintiff for an open reduction internal fixation surgery on his left leg.

7. On November 25, 2014, Dr. White operated on Plaintiff and performed the open reduction internal fixation surgery.

8. During the November 25, 2014 surgery, two drill bits from medical devices used in the operation broke off in Plaintiff's knee, and one of the drill bits was later removed, but the other was not.

9. On November 26, 2014, Plaintiff returned to Stateville post-surgery, and Dr. Obaisi admitted Plaintiff to the prison's infirmary and prescribed Tylenol 3.

10. On December 1, 2014, Dreyer Medical Clinic determined that the first surgery did not succeed in creating a stable fusion, and a second, revision surgery was needed.

11. On December 8, 2014, Dr. Obaisi authorized Dr. White to perform a second

---

[2] Following Defendant Saleh Obaisi, M.D.'s death on December 23, 2017, Ghaliah Obaisi was substituted as Defendant as the executor of Dr. Obaisi's estate

surgery.

12. On December 9, 2014, Dr. White operated a second time on Plaintiff's left leg.

13. During the second surgery, Dr. White determined that the fixation method he chose during the first surgery to reattach the knee was broken.

14. For the second surgery, Dr. White chose to use a wire in a figure eight pattern instead of the previously-used cotton sutures.

15. On December 30, 2014, Dr. Obaisi issued permits to assign Plaintiff to a low gallery and low bunk bed and to allow Plaintiff to carry two crutches, shower twice a week, and be cuffed at the waist to minimize body strain.

16. On January 21, 2015, Dr. White performed a follow-up examination with Plaintiff and noted that Plaintiff's leg had not healed properly.

17. On February 23, 2015, Plaintiff returned for another follow-up examination with Dr. White and it was again determined that Plaintiff's leg was not properly healing.

18. On February 24, 2015, Dr. White recommended that his colleague, Dr. Steven Rabin – who specializes in problem fractures and non-union surgeries – evaluate Plaintiff and give a second opinion.

19. Dr. White scheduled Plaintiff for an appointment with Dr. Rabin.

20. On February 24, 2015, Dr. Obaisi made a referral for Plaintiff to get a second opinion at UIC Medical Center, rather than a second opinion from Dr. Rabin.

21. On March 12, 2015, Plaintiff was evaluated and received a second opinion from Dr. Danil Rybalko, an orthopedic surgeon at UIC.

22. After evaluating Plaintiff, Dr. Rybalko recommended physical therapy and a gentle range of motion.

23. Dr. Rybalko did not recommend that Plaintiff undergo a third surgery.

24. Dr. Rybalko recommended that Plaintiff have a two-month follow-up appointment, but the follow-up appointment at UIC did not ultimately occur until nine months later.

25. On March 16, 2015, Dr. Obaisi referred Plaintiff for the physical therapy evaluation recommended by UIC and Plaintiff started physical therapy.

26. Dr. Obaisi also referred Plaintiff for a follow-up at UIC and authorized a medical permit allowing Plaintiff to receive ice three times a day for two months.

27. On March 18, 2015, Dr. Obaisi made a referral allowing Plaintiff to walk the hallways twice daily for thirty days.

28. On April 8, 2015, Dr. Obaisi authorized a six-month medical permit for Plaintiff for low gallery, low bunk, two crutches, shower three times a week, a waist chain, a knee brace, and slow walk.

29. On April 21, 2015, Dr. Obaisi followed up with Plaintiff and noted he was ambulating well and receiving physical therapy as ordered.

30. On December 2, 2015, Plaintiff was evaluated by Dr. Matthew Marcus, another orthopedic surgeon at UIC.

31. Upon evaluating Plaintiff, Dr. Marcus noted that Plaintiff was "holding back from playing basketball" but was otherwise "doing well" and "has a full range of motion," though his "strength [was] improving, but not there yet."

4

32. Dr. Marcus recommended that Plaintiff be seen again in a few months, but the next appointment at UIC did not ultimately occur until six months later.

33. Dr. Marcus did not recommend that Plaintiff undergo a third surgery

34. On February 3, 2016, Dr. Obaisi noted that Plaintiff had chronic pain in his knee but the pain was alleviated by heat.

35. On June 8, 2016, Plaintiff was evaluated again by Dr. Marcus.

36. Upon evaluating Plaintiff, Dr. Marcus noted, *inter alia*, that Plaintiff continued to have knee pain but was able to play basketball.

37. Dr. Marcus continued the same physical therapy treatment plan for Plaintiff with pain medication of ibuprofen or Tylenol.

38. Dr. Marcus again did not recommend that Plaintiff undergo a third surgery.

39. On June 9, 2016, Dr. Obaisi made a referral for physical therapy as recommended by UIC orthopedics.

40. A physical therapy note from March 2017 stated that Plaintiff was playing high-level sports, had no functional deficit, and was being discharged to a home exercise plan.

41. However, Plaintiff testified that, due to pain, he has been unable to run, play basketball, exercise, or walk for extended periods.

42. Plaintiff testified that the pain medication prescribed has not been effective and has caused side effects.

43. Plaintiff testified that he asked Dr. Obaisi for a third surgery at least seven times due to the pain he was experiencing, but Dr. Obaisi never approved a third

surgery.

44. Plaintiff testified that Dr. Obaisi said he would not approve a third surgery for budgetary reasons.

45. Plaintiff filed this lawsuit on September 14, 2017.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient." *Johnson v. Doughty*, 433 F.3d 1001, 1009-10 (7th Cir. 2006) (quotations and alterations omitted). Where, as here, the parties submit cross-motions for summary judgment, "the Court considers each motion separately and views the evidence in the light most favorable to the party against whom each motion is under consideration." *Fifth Third Mortg. Co. v. Kaufman*, No. 12 C 4693, 2016 U.S. Dist. LEXIS 63869, at *13-14 (N.D. Ill. May 14, 2016) (citation omitted).

### III. ANALYSIS

#### A. <u>Defendant's Motion for Summary Judgment</u>

Plaintiff has asserted a deliberate indifference claim against Dr. Obaisi. Plaintiff's claim is brought under the Eighth Amendment, which prohibits "cruel and unusual punishment" and "imposes a duty on prison officials to take reasonable measures to ensure that inmates receive adequate medical care." *White v. Woods*, 48 F.4th 853, 861 (7th Cir. 2022) (citations omitted). The Eighth Amendment proscribes "deliberate indifference to serious medical needs of prisoners amounting to the unnecessary and wanton infliction of pain." *Arce v. Wexford Health Sources, Inc.*, 75 F.4th 673, 678-79 (7th Cir. 2023) (citations and internal quotations omitted). To determine if the Eighth Amendment has been violated in the prison medical context, courts "perform a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (citations omitted). To establish that a prison official acted with deliberate indifference, "a plaintiff must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *White*, 48 F.4th at 862 (citation omitted). "[M]ere negligence is not enough," and "[e]ven objective recklessness – failing to act in the face of an unjustifiably high risk that is so obvious that it should be known – is insufficient to make out a claim." *Id.* (citation omitted).

7

In the case of deliberate indifference claims against medical professionals, "a prisoner must demonstrate that the medical professional's response was 'so inadequate that it demonstrated an absence of professional judgment.'" *White*, 48 F.4th at 862 (citation omitted). To show an absence of medical judgment, the plaintiff must demonstrate that "no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 989 (7th Cir. 1998). Along those lines, the plaintiff must show that the defendant's treatment was "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021) (citation omitted). "But where the evidence shows that a decision was based on medical judgment, a jury may not find deliberate indifference, even if other professionals would have handled the situation differently." *Id.* (citation omitted). As such, "a difference of opinion among physicians on how an inmate should be treated cannot support a finding of deliberate indifference." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006) (citation omitted); *see also Petties*, 836 F.3d at 728 ("[P]laintiffs must show more than mere evidence of malpractice to prove deliberate indifference."). Rather, the plaintiff must show that the medical professional's treatment was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996).

8

Defendant's motion for summary judgment argues that Plaintiff cannot established the elements of deliberate indifference against Dr. Obaisi. As an initial matter, Defendant does not dispute that Plaintiff's patella fracture qualifies as an objectively serious medical condition. (Def.'s Memo. at 4.) Accordingly, the question becomes whether Dr. Obaisi's treatment of Plaintiff evinced deliberate indifference pursuant to the standards set forth above. Though Plaintiff equivocates as to the precise basis of his claim, his claim centers around his personal desire to have a third surgery. According to Plaintiff, Dr. Obaisi was deliberately indifferent to his medical needs because Dr. Obaisi "refused to authorize a third surgery." (Pl.'s Resp. at 1.) As stated above, to succeed on his deliberate indifference claim, Plaintiff must show that Dr. Obaisi "actually knew of and disregarded a substantial risk of harm." *White*, 48 F.4th 853 at 862 (citation omitted). In the context of surgery, "it is not enough to show that a doctor should have known surgery was necessary; the plaintiff must instead show that the doctor knew surgery was necessary and then consciously disregarded this fact." *Oliphant v. Cook Cnt. Dep't of Corr.*, No. 09 C 3876, 2012 WL 3835818, at *11 (N.D. Ill. Sept. 4, 2012).

Defendant's expert – a board certified orthopedic surgeon specializing in adult reconstruction surgery – has opined that he would not recommend a third surgery for Plaintiff because a third surgery "would place unnecessary risk on the patient without a high likelihood of providing any benefit" and "[t]he chances of improvement are so low that it does not outweigh the risks of the surgery." [Doc.

9

No. 129-1 at 47.]³ Defendant's expert has further opined that Dr. Obaisi correctly referred Plaintiff to "the appropriate orthopaedic consultant in a timely manner" and "followed the direction of the orthopaedic surgeons appropriately." [*Id.* at 46-47.] Defendant's expert testified that he would not expect Dr. Obaisi to know whether the fracture had healed and "would expect him to rely on a specialist." [*Id.* at 224.] Overall, it is Defendant's expert's opinion that Dr. Obaisi handled Plaintiff's treatment "exactly how [he] would expect a primary care physician to do so with this injury," such that Dr. Obaisi did "not violate the standard of care." [*Id.* at 46-47.] Plaintiff "has not challenged Defendant's expert's competency" and Plaintiff's expert agreed that a "primary care physician should not have known the intricacies and details regarding advanced orthopaedic care." (Pl.'s LR 56.1 Resp. at ¶ 58; Doc. No. 129-1 at 289.)

Considering these opinions and the undisputed facts, Plaintiff has not presented evidence that Dr. Obaisi "knew surgery was necessary" and "consciously disregarded this fact." *Oliphant*, 2012 WL 3835818 at *11. To the contrary, the

---

³ Plaintiff argues that "[b]ecause [Defendant's expert] Dr. Levine's opinions are based on 'experience,' and not methodology, they are inadmissible." (Pl.'s Resp. at 8.) The Court summarily rejects Plaintiff's argument. An expert may be qualified based on knowledge, skill, experience, training, or education. Fed. R. Evid. 702; *Walker v. Soo Line R. Co.*, 208 F.3d 581, 591 (7th Cir. 2000) ("Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience."); *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010) ("An expert's testimony is not unreliable simply because it is founded on his experience rather than on data."); *Kirkland v. Sigalove*, No. 11 C 7285, 2015 WL 231875, at *2 (N.D. Ill. Jan. 16, 2015) ("At his deposition, [the doctor] confirmed that his opinions are 'based on [his] experience in performing the procedure and training [and] that's it.' This is sufficient.") (citations omitted). Further, Plaintiff is incorrect that Dr. Levine did not explain why he reached his conclusions concerning the propriety of a third surgery, as Dr. Levine explained that a third surgery was not advisable because, *inter alia*, a third surgery would entail risky bone grafting procedures or highly unpredictable mesh procedures. [Doc. No. 129-1 at 225.]

10

undisputed facts show that the two orthopedic surgeons who evaluated Plaintiff following his second surgery – the specialists who were qualified to determine if Plaintiff required a further surgery – did not recommend a third surgery. Dr. Obaisi, who essentially acted as a primary care physician, was not qualified to independently determine that a third surgery was in fact necessary. Accordingly, in light of the orthopedic surgeons' determinations that a third surgery was *not* necessary, it unavoidably follows that Dr. Obaisi could not know that a third surgery *was* necessary.

The Court finds instructive the decision in *Johnson v. Estate of Obaisi*, No. 14-CV-10117, 2019 WL 4674587 (N.D. Ill. Sept. 25, 2019). In that case – in which Dr. Obaisi was also a defendant – the plaintiff brought a deliberate indifference claim with respect to Dr. Obaisi's treatment of a varicocele on his left testicle. As part of his treatment for that condition, the plaintiff was approved for a urology evaluation at UIC, and the plaintiff later went to UIC and was evaluated by Dr. Simone Crivellaro, a urologist. Upon evaluating the plaintiff, Dr. Crivellaro determined that surgical treatment was not indicated. The court granted Dr. Obaisi's motion for summary judgment as to the varicocele condition. In evaluating the plaintiff's claim that Dr. Obaisi should have approved surgery, the court reasoned as follows:

> Johnson also argues that Dr. Obaisi's refusal to recommend surgery caused needless suffering. But Johnson was twice examined by Dr. Simone Crivellaro, a board-certified urologist. . . . [A] jury could only find that Dr. Crivellaro considered Johnson's reports of pain, and yet still did not believe that surgery was indicated. *So Dr. Obaisi's decision to follow a specialist's recommendation for a non-operative course of treatment*

11

>  *was reasonable and did not amount to recklessly disregarding Johnson's condition*. . . . [T]here is nothing in the record to suggest that Crivellaro was not minimally competent or that his non-surgical treatment plan was so off base that Obaisi should have, on his own, contradicted the specialist's recommendation. . . . All in all, even viewing the evidence in Johnson's favor, the factual record does not permit a reasonable jury to find that Dr. Obaisi was deliberately indifferent to Johnson's varicocele condition.

*Id.* at *8 (emphasis added, citations omitted).

In this case, as in *Johnson*, the examining specialists did not believe that a third surgery was indicated. Accordingly, Dr. Obaisi acted appropriately in following the specialists' recommendations that Plaintiff receive physical therapy rather than surgery. *See Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 659 (7th Cir. 2021) ("[T]he undisputed evidence shows that these two denials [of surgery] were consistent with the medical advice from the outside orthopedic surgeon, Dr. Koth, to avoid ACL reconstruction surgery unless and until it became 'absolutely necessary.' This exercise of medical judgment by the outside specialists makes it difficult at best to show that Wexford's delay in going through with the surgery amounted to deliberate indifference to Howell's serious medical needs."). Moreover, quite plainly, Dr. Obaisi's decision not to approve a third surgery (that was not recommended by any specialists) was not "blatantly inappropriate" or so far afield of professional standards so as to evince deliberate indifference to Plaintiff's medical needs. *See Johnson v. Dominguez*, 5 F.4th 818, 826 (7th Cir. 2021) ("[Defendants] determined a surgery referral was not appropriate. This determination . . . was not 'blatantly inappropriate' or made in the absence of professional judgment.").

12

This brings the Court to Plaintiff's expert's opinions. Per his testimony, Plaintiff's expert has not rendered an opinion regarding the UIC surgeons' decisions not to recommend a third surgery, and he does not "think the UIC doctors did anything wrong." [Doc. No. 129-1 at 264.] Nevertheless, Plaintiff's expert has opined that he would recommend that Plaintiff undergo a third surgery. Unfortunately for Plaintiff, this does not get him very far. That is because Defendant's expert has contrarily opined that a third surgery is *not* advisable and, as set forth above, "a difference of opinion among physicians on how an inmate should be treated cannot support a finding of deliberate indifference." *Norfleet*, 439 F.3d at 396 (citation omitted); *see also Petties*, 836 F.3d at 729 ("[E]vidence that *some* medical professionals would have chosen a different course of treatment is insufficient to make out a constitutional claim."). Indeed, Plaintiff's expert testified that "different surgeons would disagree" as to whether a third surgery was advisable. [Doc. No. 129-1 at 179]

Perhaps recognizing the fundamental deficiency in his assertion that Dr. Obaisi should have flat out gone ahead and authorized a third surgery (despite no specialist recommending that he do so), Plaintiff also argues that Dr. Obaisi "was deliberately indifferent to Plaintiff's serious medical needs by refusing to authorize Plaintiff for a recommended *surgical evaluation*." (Pl.'s Resp. at 3 (emphasis added); *see also id.* at 6 ("Refusal to authorize recommended surgical evaluation on these facts constitutes deliberate indifference."); Pl.'s LR 56.1 Resp. at ¶ 6 ("Plaintiff admits that he sued Defendant for refusing to authorize a third surgical evaluation

13

of Plaintiff's broken leg.").) The problem for Plaintiff, of course, is that Dr. Obaisi did in fact refer Plaintiff to UIC to get a second opinion and further evaluations. There is no evidence that Dr. Obaisi told Drs. Rybalko and Marcus *not* to evaluate whether Plaintiff required surgery, and it would be ludicrous to conclude that the UIC orthopedic *surgeons* did not consider Plaintiff's history and determine whether a third surgery was advisable (*i.e.*, a "surgical evaluation"). So, Plaintiff's implied assertion that the UIC orthopedic surgeons did not perform "surgical evaluations" must be rejected.[4]

Another fundamental problem for Plaintiff is the fact that his expert has not actually provided any opinions directly criticizing Dr. Obaisi's treatment. The closest Plaintiff's expert comes to offering an opinion concerning Dr. Obaisi's treatment is his generalized statement that "complaints of continued pain in a previously twice operated knee should have resulted in a new referral for an updated or second orthoaedic opinion." [Doc. No. 129-1 at 289.] In pointing to this generalized statement, what Plaintiff is really asserting is that Dr. Obaisi should

---

[4] While Plaintiff focuses on the fact that Dr. Obaisi referred him to UIC rather than Dr. Rabin (who his first surgeon had recommended), Plaintiff was not entitled to see any particular specialist or one of his choosing. *See Moore v. Tomlin*, No. CV 20-1892, 2021 WL 1131811, at *3 (E.D. La. Jan. 12, 2021) ("That an inmate's medical care . . . may not have been the best money could buy is insufficient to establish a constitutional violation, and a prisoner is not entitled to medical treatment of his choosing simply upon request.") (citations and internal quotations omitted); *Jones v. Vadlamudi*, No. 9:13-CV-00025, 2015 WL 670474, at *6 (N.D.N.Y. Feb. 17, 2015) ("Plaintiff also contends that Dr. Vadlamudi acted with deliberate indifference when he denied his request to visit with an outside specialist of his choosing. In particular, Plaintiff complains that he was not allowed to return to Dr. German at Albany Medical Center for follow-up care, but instead was referred for consultation with a neurosurgery specialist located at Walsh. . . . Plaintiff falls short of demonstrating that Dr. Vadlamudi acted with reckless disregard to his back condition by referring him to a different neurosurgery specialist. . . . Plaintiff was seen by various specialists to care for his back pain.").

14

have referred him to a *fourth* orthopedic surgeon (after Drs. White, Rybalko, and Marcus) for a *fourth* opinion. However, Plaintiff's expert has not opined that Dr. Obaisi not sending Plaintiff for a fourth opinion violated the standard of care, much less that it was blatantly inappropriate or so far afield of accepted professional standards. The other statement of Plaintiff's expert that he points to is his expert's statement that "[i]f not incarcerated, [Plaintiff] could have at least benefited from a second opinion or re-evaluation so that he could have understood the risks and benefits [of] a revision surgery." [Doc. No. 129-1 at 291.] While it may be true that Plaintiff could have sought a fourth opinion if he was in the outside world, Plaintiff points to no authority suggesting that the standard in deliberate indifference cases is that an inmate should be provided precisely the type of medical treatment the prisoner himself would pursue if he were not incarcerated.

Though Plaintiff's main focus is on surgery, he also argues that Dr. Obaisi was deliberately indifferent because he caused a delay in Plaintiff's appointments at UIC. That assertion is easily disposed of because Plaintiff has not come forward with any evidence that Dr. Obaisi is directly involved in the details of scheduling outside medical appointments for prisoners. *See Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 966 (7th Cir. 2019) ("[N]othing in the record suggests that Dr. Obaisi's actions or inaction caused any of the scheduling delays with Walker's appointments at UIC. Such a lack of personal involvement saves Dr. Obaisi from liability here."); *Johnson*, 2019 WL 4674587 at *7 ("Johnson offers no evidence to suggest that *Obaisi* himself caused the delay. In deliberate-indifference cases like

15

this one, the plaintiff ought to use the tools of discovery to ferret out the reasons for delays in treatment, but Johnson points to nothing in the record that lays the blame at Obaisi's feet."); *Smith v. Wexford Health Sources, Inc.*, No. 15 C 3730, 2017 WL 5464367, at *5 (N.D. Ill. Nov. 14, 2017) ("[T]here is no suggestion in the record that Dr. Obaisi was aware of Smith's rescheduled appointments or any lapses in rescheduling; other staff members were responsible for scheduling.).

      Lastly, Plaintiff argues that Dr. Obaisi was deliberately indifferent to his medical needs because he "persist[ed] in an ineffective treatment plan." (Pl.'s Resp. at 3.) Though Plaintiff clearly believes that his treatment plan was ineffective, Dr. Obaisi undertook the treatment plan recommended by the specialists and Plaintiff's "[m]ere dissatisfaction or disagreement with a doctor's course of treatment is generally insufficient" to establish deliberate indifference. *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). Because Dr. Obaisi "exercised [his] professional judgment in responding" to Plaintiff's medical condition, Plaintiff's "ultimate disagreement with [Dr. Obaisi's] course of treatment provides no basis to support [Dr. Obaisi's] deliberate indifference." *Johnson*, 5 F.4th at 825-26; *see also Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019) ("It is firmly established, however, that mere '[d]isagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish and Eighth Amendment violation.'") (citation omitted).

Ultimately, courts look at "the totality of an inmate's medical care when considering whether that care evidences deliberate indifference to serious medical needs." *Lisle v. Welborn*, 933 F.3d 705, 716 (7th Cir. 2019) (citation omitted). In this case, the undisputed facts are that after Plaintiff injured his knee, Dr. Obaisi referred Plaintiff to an orthopedic surgeon at an outside medical clinic, approved two surgeries, provided Plaintiff lifestyle accommodations such as low bunk permits, referred Plaintiff to UIC for a second opinion, approved several rounds of physical therapy, and provided on-site examinations. Based on the undisputed facts, no reasonable jury could conclude that Dr. Obaisi's treatment of Plaintiff was blatantly inappropriate or so far afield of accepted professional standards. Accordingly, Defendant is entitled to judgment as a matter of law on Plaintiff's deliberate indifference claim.

### B. Plaintiff's Motion for Summary Judgment

In moving for summary judgment, Plaintiff contends that "[t]he record evidence establishes that Defendant was deliberately indifferent to Plaintiff's serious medical needs by refusing to authorize a recommended surgical evaluation" and "persisting in [an] ineffective treatment plan." (Pl.'s Memo. at 1.) The Court has rejected those arguments above. Further, the Court finds that the undisputed facts dictate but one conclusion whether they are viewed in the light most favorable to Plaintiff or the light most favorable to Defendant – no reasonable jury could conclude that Dr. Obaisi's treatment of Plaintiff was blatantly inappropriate or so

17

far afield of accepted professional standards. Accordingly, Plaintiff's motion is denied.

### C. Plaintiff's Remaining Counts

In addition to his deliberate indifference claim, Plaintiff's operative Third Amended Complaint also asserts counts for denial of basic needs under the Eighth Amendment and cruel and unusual punishment under the Eighth Amendment. The Court finds that these latter counts are duplicative and are subsumed by Plaintiff's deliberate indifference claim. *See Hruby v. Hodge*, No. 13-CV-386, 2013 WL 2403272, at *1 (S.D. Ill. May 31, 2013) ("Although Plaintiff's complaint outlined his cruel and unusual punishment claim in a separate count from his deliberate indifference claim, both legal theories arise from the 'cruel and unusual punishment' clause of the Eighth Amendment."); *Calloway v. California Dep't of Corr. & Rehab.*, No. C 07-2335, 2009 WL 1011728, at *1 (N.D. Cal. Apr. 15, 2009) ("Although plaintiff alleges two separate claims in his complaint, the court concludes that both claims can be subsumed in one allegation of deliberate indifference to serious medical needs, in violation of his Eighth Amendment right to be free from cruel and unusual punishment."); *Adell v. Manlove*, No. 19-C-438, 2019 WL 2211024, at *3 (E.D. Wis. May 22, 2019) ("The Eighth Amendment protects an inmate from a governmental actor's deliberate indifference to his basic needs, including an inmate's medical needs."). Accordingly, because Defendant is entitled to judgment as a matter of law on Plaintiff's deliberate indifference claim, he is also entitled to judgment as a matter of law on Plaintiff's remaining counts.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for partial summary judgment [Doc. No. 126] is denied, and Defendant's motion for summary judgment [Doc. No. 127] is granted.

**SO ORDERED.**            **ENTERED:**

**DATE:**    **October 18, 2023**        _____
                                                   **HON. MARIA VALDEZ**
                                                   **United States Magistrate Judge**